Run-of-the-mill construction litigation number 24-14249, AmeriShure Insurance v. Landmark American Insurance. Mr. Mallard. It pleases the Court, Spencer Mallard for Appellant Landmark American Insurance Company. And Judge Jordan, I appreciate the commentary. This is not perhaps as interesting factually as some of the cases that we've sat through today, but it is nonetheless important. And on appeal, this is an issue involving a dispute between two insurance companies for a judgment that was entered in a construction defect case. Landmark, my client, we're appealing on six grounds, and we lay that out in the brief, and it's essentially a funnel approach. And it's not so much an order of priority of argument as it just allows to guide the Court where the first two grounds that we're seeking would eliminate the underlying judgment entirely. One would be the application of the exclusion found in Landmark's policies. The second would be an equitable exception to Georgia law, which would also eliminate the entirety of the claims. The next three arguments are basically attacking different parts of the judgment. So, for example, we have the position that there was no property damage established by the underlying judgment, and therefore there can be no indemnity owed under any policy, which would erase $2 million of this judgment. It would also, by extension, eliminate other parts of the judgment that I'll talk about. We also have the lack of occurrence position, which either would eliminate the entirety of the $2 million judgment on indemnity, and also the corresponding attorney's fees that were linked to it, or at the very least, it would limit the judgment to only one policy period. Okay, can we...I have tried several times to wrap my head around all the issues here. I'm not sure that I completely understand them as we sit here today, but I'll start trying to tell you about my ignorance. Does the exclusion issue depend on the answer to two subsidiary questions? One, does the exclusion apply to this project and to the insured in this project? And two, if it does, does that make the policy coverage illusory under the appropriate law? Okay. I think I can answer both of those questions for you. But am I right that those are the two...with regards to the exclusion... The Ethos exclusion, yes. The exclusion, right? Are those the two questions, or are there more questions involved there? I think it's as simple as does it apply to this project, which answers yes, and the second question, is it illusory, answers no. Right, I was going to ask you for the answers to those questions, but first... Those are the two issues, I agree. Right, there's nothing else about the Ethos exclusion that we need, from your perspective, that we need to address. Those are the two big ticket questions. I agree, Your Honor. It's basically express language in an insurance policy, and we're asking the court to interpret it. Okay. Tell me why, in your view, this is not illusory. And whose law do we apply in figuring out illusoriness? Well, first, we do apply Georgia law. The procedural history shows that there was definitely some complexities where this case was essentially two parts. It was Amerisher and Arch, which was decided solely under Florida law, and then once those issues were resolved, it became Amerisher v Landmark, which was resolved under Georgia law. Now, Florida law on some of these issues is more well-developed than Georgia law. So both parties, where Georgia law was silent, did the best they could and borrowed from Florida law, given that we are in the 11th Circuit. But to be clear, it's Landmark's position, wherever there's any kind of difference in law between Georgia and Florida, Georgia law absolutely applies. And for purposes of the illusory discussion, there really isn't a material difference between Florida and Georgia. Both come down on illusory means it strips away all coverage. That's not the circumstance we have here. Does it mean it strips away all coverage for the entire period of coverage or on a project-by-project basis? And if the insured is only involved in one project and it strips coverage from that project, does that lead to a finding of illusoriness? Well, there are two different types of policies, Your Honor. There are project-specific policies and what's called the industry practice policies. This was a practice policy. It was for a given time of year, no matter how many projects the insured did. It wasn't a project-specific policy. So I don't think that whether the insured did one project or not is not really a relevant concern. Now, in terms of illusory, I mean, the best way I can give the example is the case that we think the District Court erroneously applied, which was St. Paul, where the insurer in that case had a stucco installer and made the argument that, well, all of the stucco installer's work in stucco is actually EFIS. Therefore, there's no coverage for anything that this subcontractor does. That's an extreme scenario. That's not the facts of this case. But was that an industry practice policy or a project-specific policy? Practice policy. But basically, the rationale was an insurer wrote an insurance policy to a stucco installer and then sought to exclude all installation by trying to analogize it to EFIS, which is a different product than stucco. That's an extreme result. That's not what we're asking for here. We're asking for the Court just to apply the express language of the exclusion, which says, in essence, if you perform exterior work on a building that has EFIS, there is no coverage. That's exactly the facts we have here. There's no dispute on that. What do the leading insurance treatises say, if anything, about the question of illusoriness in these EFIS exclusions? I would struggle to cite a specific treatise, but just from general knowledge of reading a lot of secondary sources, illusory refers to when you strip away all coverage under a policy. There's many instances where exclusions will apply in a given claim, which is exactly what happened here. I mean, otherwise, why would you have exclusions in an insurance policy at all? If they could never apply, what's the point of having them? Here, the insurer did install windows on a building that had EFIS. The exclusion applies. If the insurer, you know, the next day installs windows on a building that doesn't have EFIS, the exclusion doesn't apply. So, to move forward, the last argument addressing the portions of the judgment, if the EFIS exclusion and the equitable exception aren't dispositive, is the notion of this unbriefed $6 million that was awarded by the district court. As we talked through in the procedure, that was never subject to a motion for summary judgment. Landmark was never afforded an opportunity to oppose that. We think it's procedural error at a minimum. We also believe it's substantive error, and that the district court's determination is based on Florida law. Obviously, Georgia law is different here, and we cite the Bitco decision for that proposition that Georgia law does not recognize attorney's fees as supplementary payments. And, you know, but before we even get to the substance, procedurally, that we were deprived of any opportunity to brief that issue at the lower court, and that judgment cannot stand. As far as the final issue... Did you, not that you were required to, but did you move for reconsideration on that issue? We filed multiple different motions that I guess you could call reconsideration, but we essentially... Before, the procedural aspects were a little complicated. The Mayor Schor and Arch entered into a settlement and then sought to substitute parties and sought to agree, and sought our agreement that they could substitute. Our agreement was expressly premised on there's no more new issues raised in the case. So even from the very beginning, the substitution of the party, we raised that before there was ever an issue. And then in subsequent filings, we did raise that to the court's attention, and the court ultimately just ratified a damages award against Landmark without ever allowing Landmark to provide a substantive argument on the issue. Tell me about this equitable argument of yours. I didn't quite understand the equitable exception. The equitable exception is not something I would spend a lot of time discussing, but it's important for the court to understand in other aspects, such as the number of occurrences and the duty to defend. The complaint, what ended up being found to be the trigger of a duty to defend on behalf of Landmark was this Christmas 2006 water intrusion event. And in the equitable section, we talk about that quite a bit, what that was. That was a rainstorm during construction before the building was completed, before the building was dried in. That's not a defective construction issue. The building owner made a builder's risk insurance claim. The builder's risk insurer paid that claim. That event was never part of the underlying case. It was not part of a judgment. It was basically just a background fact pled in a complaint. So whether it's an equitable argument or more germane to the fact that there was no occurrence under the 2006 policy or a duty to defend based upon that allegation, those are the more salient points on that issue. We essentially have a background fact pled that is in essence costing my client a million dollars and also other extenuating damages. So that's the issue with that. Okay, but how does the equitable exception work as a matter of law, generally speaking? It's equity, Your Honor, so it really wouldn't be a matter of law. I'm not going to represent to the court that it's a matter of law. No, no, but I get that. I appreciate what you just said, but how does it operate? What are the parameters of that? Even in equity, there are parameters for the exercise of discretion. Yes, Your Honor. So how does this equitable exception operate in the world of equity? When do you trigger it? When do you apply it? When do you not? So in the papers, we cite that courts can consider extrinsic evidence in special circumstances in which extrinsic facts are undisputed, and if they had been pled, it would have taken a claim out of coverage. So it's basically asking the court to assume an undisputed fact that if to be true, and then doing a coverage analysis. And as we've stated, the 2006 rain event before the building was ever completed is not an occurrence of property damage within this policy. All right, thank you very much. I'll save you time for rebuttal. Yes, I'll save it. Okay, Mr. Elder. Yes, Your Honors. Don Elder on behalf of the Appalese AmeriShare Insurance Company and AmeriShare Mutual Insurance Company. I guess the best place to start is perhaps the Ethos, but in terms of the representation as to Georgia law, I think respectfully is a misrepresentation as to what Judge Davis found. Judge Davis did a scorched earth search as to any conflicts between Georgia and Florida law. And what he found was there was no distinguishment to apply Carothers from this court in terms of the legion of property damage that was developed in the underlying trial suit. The underlying trial was a 28-day trial that resulted in a multimillion-dollar judgment. What the court found there was that we had 356 windows that were installed by TSG. Now, TSG was Landmark's named insured. They were involved in the lawsuit as well. Auctor was the additional insured general contractor. They are also identified and acknowledged as an insured. 356 windows, 100% of them leaked. 28% of those, this is from RAP, the property owner's expert, went beyond the sill and damaged everything from acoustical tile to carpet. Landmark acknowledged a duty to defend Auctor. They did so in 2011 under five separate letters. Not once did they mention the Ethos exclusion. We've made this argument several times. We think this has been waived. If this was such an issue, this should have been put front and center. It never was. But to the points that have been raised by this court, this is Can you waive lack of coverage as opposed to a defense? You can, Your Honor, under Florida and Georgia law. If you do not articulate that in a position letter, it is waived. What's the best case under, let's say, Georgia law or Florida law, if you have nothing in Georgia, that says that an insurer waives reliance on exclusion if it puts it in a reservation of rights letter? The best case I can come to mind, Your Honor, is Carruthers for me. In that case, the court was referring to the absence of particular exclusions and actually referenced that to the extent there's an ambiguity or silence in the record, that it's to be interpreted in favor of the insured. And that's under this court under Florida law. But get to the, excuse me, Your Honor, as to the EAVS exclusion. The EAVS exclusion in this case was exceedingly broad. There are multiple issues that are problematic with the EAVS exclusion here, not just the illusory coverage, which we believe should be affirmed. Judge Davis scoured the record and came up with the timeline. The problem in this case is such. TSG did the windows. All of them leaked. TSG, excuse me, landmark issues of policy in January of 2006. TSG is doing the windows. They're not doing anything with the EAVS. And incidentally, EAVS on this project was never intended at the outset. It was supposed to be precast concrete. That was the original discussion between the developer and the owner. TSG does the window system. That contract is entered into in June of 2006. What landmark, again, in 2011, and landmark issues reservation of rights letters, no mention of EAVS whatsoever. What landmark is now in the context of this lawsuit attempted to do is to reach back to 2005 and to cite to a reference to EAVS, which Judge Davis and Judge Jay, who was the Duval County Court, went through and determined that they didn't believe EAVS was even supposed to be used. But TSG, most importantly, landmarks named insured doing the windows would never have known this. They had no intention of doing anything having to do with EAVS. They didn't touch EAVS. They weren't doing anything. They did the window system. So in January 2006, landmark issues its policy. June 2006, TSG goes to the project. The moment they get on that project, because landmark is looking back into 2005 in the insurance parlance, they're bare. There's no coverage. And why do I say this? Because this exclusion is exceedingly broad. It's not just for property damage. Landmark has cited to the BITCO decision from the Northern District. That exclusion was narrower. That dealt only with property damage. This exclusion deals with bodily injury, property damage, and personal and advertising injury. So the moment TSG walks on having no knowledge that EAVS was going to be there, and from what we can tell, EAVS wasn't even put on. It was value engineered after landmark had done it and completed its work. All right. Let's talk about the language of the exclusion. Yes, sir. Does your work refer in the schedule to TSG's work or to everybody's work on the project? His work, your honor. Your, the pronoun your is defined as TSG specifically. Right. But then when you get to the schedule, it says any work or operations with respect to any There's sort of like a grammatical disconnect between those things. It is. I would go so far as your honor not to be glib to call it an ambiguity. The pronoun you is a specifically defined term in this policy. It's right at the outset of the insuring agreement. And yet they say your work. Incidentally, they haven't redefined your product in this exclusion, but your work. And then they attempt to expand it to any. That's inherently ambiguous. And it's ambiguous in context because the your work definition that was being cited in the reservation of rights letters to Octor, the general contractor, didn't have any of this language. It was the standard form that specifically worked back to TSG's work. So we have a problem with that, your honor. And if I may, we have a problem with the language of this endorsement as well as we cited in our papers. This is limited only to products completed operations. Landmarks insured TSG was there from 2006 and all the way through their policy periods was working. And we have, I think I used this term earlier, so forgive my repetitiveness, a legion of evidence. We have letters of water intrusion at the window system in early 2007. We have specific allegations in the complaint referencing the water intrusion through the curtain wall, which has also been referenced to the window system here. Do you think that there's other coverage for the defect in addition to the products completed operations hazard? I think so. For ongoing operations. It's excluded expressly from this exclusion. There's no mention of ongoing up. That's exactly what TSG was doing. They were ongoing. They were working throughout. They weren't filled in. In fact, if you'll bear with me for just a second, your honor, I had a, oh well. What we know is that we have water damage in the building in January of 07. The curtain wall wasn't closed in February of 2007. Window testing is still going on. This is TSG's own work in April of 2007. Okta eventually goes out of business, which was unfortunate. And that, they don't even cede that contract to the surety arch until April of 2007. This operation was going on. All of the damage being sought from Landmark occurred during its policy period. These are ongoing operations. This is cited in our papers. This is on the express language. All right. Tell me why. Assuming the exclusion applies. Okay. So take that as a given now for purposes of my question. Okay. Okay. Why does the application of the exclusion render the policy coverage illusory under Georgia law or Florida law? Oh, if it applies your honor? Yes. I'm asking you to assume contrary to your position that it applies. And so the other argument you have is if it applies, it's illusory. It makes coverage illusory and therefore you can't give it any effect. It's illusory, your honor, because it was never contemplated before between the contracting parties for this insurance. And that's all based on the timeline. Okay. So if that's the argument, what principle of law, Georgia or Florida, says that matters when determining whether something is illusory or not? Well, I guess I can't believe I'm doing this, but I'll cite to the BitCode case, which talks in terms of the scope of coverage. The problem we're having with the illusory, if this applies, is when you look back, they're reaching back in time to essentially fundamentally alter the contract. If it applies, the problem we're having is, first, as I mentioned, I don't think it applies on its face to the ongoing operation. But if it applies, the problem we're having is the breadth of this exclusion. This can't possibly be with this exclusion. But their point, their argument is, and this is what I want you to respond to, assuming the exclusion applies. Even if it's so broad to eliminate your TSG's coverage for this project, because it provided coverage during a whole year, TSG could have worked on other projects where EFIS wasn't being used, and it would have provided coverage there. Ergo, there's no illusory problem. I would respectfully say that that question was actually addressed again. Can't believe I'm doing this in the BITCO case. They're looking at this on a project-by-project basis. So to the extent that the court is asking whether or not this coverage may be available at some other project, say here in Atlanta, maybe, possibly. It depends on whether or not EFIS was being used and whether it fell within the confines here. But this is a project per project, and that's exactly what the BITCO court said. They say it's not a project-by-project policy. It, well, it is when you look at the situs and you look at the law between Georgia and Florida. This goes into the attorney's fees and whatnot. It's the situs of where they're doing the work is where they're determined, whether you're going to strip them of coverage. No, no, no. But they say that the policy wasn't just for this construction project. It applied to any other construction projects that TSG may have been involved in. Therefore, application of the exclusion to this project doesn't render coverage illusory. That's their contention. I just want you to respond to it. The answer is, the answer is it might. There may be coverage for another project, Your Honor, and I think I'm, I don't mean to suggest that I'm sparring with the court. I'm trying to answer this. But I'm looking at this at the narrow prism of this project, this loss, these insureds, and using the BitGo lens to say when we're looking at evaluating the illusory coverage, as cited in our brief, Your Honor, it's this project, whether or not they lived up to their contractual obligations, and this project, the way that they're looking at this and when they've reached back in time, it's illusory based on its breadth, based on its language. All right, let's talk, let's shift over because you don't have much time left. Let's shift over to the $5.9 million. Yes, sir. Their argument is you never briefed it, you never asked for it specifically, they never got a chance to respond. So whether or not you're entitled to it, they get reversal to go back to the district court and have it briefed and decided. Tell me why they're wrong. They're wrong, Your Honor, because they had more than an opportunity, and the record bears that on, Your Honor. There was a counterclaim filed specifically by Arch. Did you move for summary judgment on the $5.9 million? Not on the $5.9 million, Your Honor, but we did move for it on the duty to defend, which the court found, I think, at least twice. Duty to defend does not trigger payment of money. Well, Your Honor, not unless you have a bad faith claim for failure to defend. But if you're asking, I'm not saying you didn't ask for this in your complaint or your counterclaim or your cross-claim, whatever it was. I've lost track. But at summary judgment, the movement has to ask for certain things. The other side responds to those certain things. And whatever people don't move for, presumably go to trial. Right? So it's a, you move on grounds one, two, and five, they respond to grounds one, two, and five. But if you don't move on three and four, they don't have to respond to three and four. And so their point is that at the summary judgment stage, you didn't tell the court under summary judgment principles were entitled to an award, an additional award of $5.9 million, and they therefore did not respond. So I just want to know why you think that's mistaken. I think it's mistaken based on the predicate findings on the breach of the duty to defend. And if Your Honor, I can see Your Honor's eyebrows were already. I will get to it. There was a secondary lawsuit because of their failure to defend Octor. This is an Octor-specific question. And the arch fees were in defense of Octor as the surety for the defective work. Right. The secondary lawsuit was to impose these fees on Octor, which resulted in a judgment. Landmark didn't defend that lawsuit either. That court, I believe it was Judge Jay again, took full judicial notice of the record in the original trial. So our secondary position, if the court is troubled by any of the procedural issues here, which we believe we've rebutted in our papers, is that the supplementary payment also allows for a grant of fees for this amount. You may be entitled to it. I'm not denying that. I don't know the answer, but I'm not denying that. They're saying that there was a procedural problem, failure to be allowed to respond, whether they're going to win or lose. You're saying it's harmless error because you would have been entitled to in any event? I don't want to put words in your mouth, but that's what it seems like you're saying. Well, I do think it was harmless error, Your Honor, but I think the record was cured in terms of the predicate findings to Octor, the judgment against Octor, and the specific language in their policy. The breach of the duty to defend allows for any reasonable cost to be imposed against the breaching insurer, and the supplementary payment provision allows for an award of costs against the insured. Notably, they've got a form that allows for costs against the insured that Florida law recognizes in this context. In 1207, the Insurance Services Office amended that language to exclude attorney's fees, which I think shares a clear intent. But our position is the predicate findings were there, the pleadings were there, the judgment against Octor was there. They breached their duty to defend, and they owe it either as a consequence of breaching the duty to defend or through the supplementary payment provision in their policy. And we do think the record bears out that they had enough to at least be aware of this issue. All right. Thank you very much. Thank you, Your Honors. I would just add that we would ask that Judge Davis's judgment be affirmed, and thank you immensely. All right. Thank you. So, Your Honors, it seems like we're purposes of the argument honing in on EFS and the 5.9 million, so I'm going to focus on those. Well, let's talk about EFS for a second. So, the exclusion says your work and your product, and then subclause two says any work or operations with respect to any exterior component that has EFS. So, what do you make of that? Because yours doesn't seem to involve, in the normal parlance, yours doesn't seem to involve somebody else's work. It involves what you've done. So, if you did any work involving EFS, you're out. But this, you're reading it in a way to say that your work means work done by anybody on the project. Your Honor, that's what the policy says. And the EFS exclusion under description of your work, which is a defined term in the policy, number two says any work or operations with respect to any exterior component, fixture, or features of any structure, if an exterior insulation and finish system is linked in any part of that structure. Why isn't there ambiguity? If the definition defines your work in a way that makes your work unintelligible. No, it's defining it multiple ways. It's inclusive of all of these. It's the conjunctive. Your work means your work and that's exactly what it says in the policy. That doesn't make any sense. Your Honor, it's what it says in the policy and it's not ambiguous. It's saying any work that is on a building that has EFS is excluded. That's what the policy says. And Your Honor, I just, I know you were on the panel for the Kaufman-Linn case, which also had an issue where there was argument that the application of the exclusion, it was a COCE exclusion, wasn't really germane to the underlying loss, but as the court ruled, that was irrelevant. The court applied the policy by its terms and that's what we're asking the court to do here. And as the BITCO court did, we also cite a Southern District of Iowa case that compared this finding in the lower court to BITCO and determined that the BITCO finding was more persuasive. Your Honor, if I can very quickly. Now, last question about the text of the exclusion. It says that the exclusion covers, this insurance does not apply to ellipsis, property damage ellipsis, included in the product's completed operations hazard. They say that there's other coverage besides the product's completed operations hazard, thereby making the exclusion non-applicable. One, this was an issue not raised in the underlying case, which waived. Two, that's incorrect based on the facts. Why is it wrong based on the facts? This is just a language of policy issue. But in terms of the, let's call it PCOH, there is no separate limit for PCOH versus ongoing operations. It's a million dollars per occurrence. I mean, that's what it is. But then what is the product's completed operations hazard? That's a definition that has different uses in the policy, but essentially it's when the work has been put to its intended use or it's been completed. As alleged in the complaint, TSG's was completed in the 2007 policy. So even assuming this argument could be raised untimely, it is factually incorrect because the allegations in the complaint and the underlying facts demonstrate that TSG's work was complete in 2007 during the 2007 policy. We are already on record saying the 2006 policy doesn't apply for the reasons I've stated. Okay. I prevented you from making your rebuttal argument, so I'll give you two more minutes. Thank you. So quickly on the notion that the reservation of rights is somehow a waiver, the lower courts already rejected that argument in summary judgment practice. The lower court correctly ruled that issuance of reservation of rights is not a stopple on a carrier from amending its position. And both under Florida and Georgia law, there's no affirmative obligation for a carrier to advise that coverage doesn't exist based on the terms of the policy. What counsel is trying to refer to, at least under Florida, is the claims administration statute, which requires a carrier to advise if there's been a breach of a policy condition, such as late notice or, you know, failure to cooperate. There's nothing involving whether you can assert an exclusion to the policy that always existed. So there's no waiver issue here. I just want to be clear on that. The discussion about the unbriefed damages, I think the court was already keyed into it, but I want to make clear this other lawsuit that was referred to, that was not anything that was considered by the lower court. We certainly didn't have any way to brief it. I'll say, you know, just factually, that was involving primarily surety obligations between ARCH and Amerish, ARCH and Amerishers Insured Outer that were different than what we're talking about here. So I think the court's already there on, we didn't have an opportunity to be heard at the lower court level, but I just want to make it factually clear that that other case does not alter the analysis. So ultimately, Your Honor, we're asking the court to apply the plain language of the contract the same way it did in Kaufman-Linn, the same way BITCO did, the same way that the Southern District of Iowa said was better in BITCO than it was in the underlying case here. We also have additional arguments that we that we will rest on our papers on and ask that the court overturn the judgment and find in Landmark's favor. Thank you. All right. Thank you very much. We're in recess for today.